IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIMELECH SHMI HEBREW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 09-CV-3274 |
| | § | |
| HOUSTON MEDIA SOURCE, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION**

Pending before the court[1] are Defendant Houston Media Source, Inc.'s Motion for Judgment on the Pleadings and/or for Summary Judgment (Docket Entry No. 14) and Plaintiff Elimelech Shmi Hebrew's Motion for Judgment on the Pleadings and/or for Summary Judgment (Docket Entry No. 20). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES AS MOOT** Defendant's Motion for Judgment on the Pleadings; **GRANTS** Defendant's Motion for Summary Judgment (Docket Entry No. 14); **DENIES AS MOOT** Plaintiff's Motion for Judgment on the Pleadings; and **DENIES** Plaintiff's Motion for Summary Judgment (Docket Entry No. 20).

**I. Case Background**

Plaintiff Elimelech Shmi Hebrew ("Plaintiff") initiated this action on October 9, 2009, mainly asserting various First Amendment

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 10.

civil rights violations pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendant Houston Media Source, Inc. ("Defendant").[2] Plaintiff requests one billion dollars in relief.[3] Both sides move for judgment on the pleadings and for summary judgment on these claims.[4]

---

[2] Complaint, Docket Entry No. 1. Plaintiff also brings suit pursuant to "18 [U.S.C.] § 242 for deprivation of right of freedom of speech secured by the Constitution and laws, and The Texas Constitution Article 1 Bill of Rights Sec 19." Id. at 1.

The court first notes that 18 U.S.C. § 242 is a criminal statute with no correlating civil cause of action. Parham v. Clinton, No. 09-20681, 2010 WL 1141638, at *1 n.1 (5th Cir. Mar. 17, 2010) (unpublished). Thus, it has no applicability to the present civil proceeding and the court dismisses this cause of action with prejudice.

The court also notes that the Texas Constitution does not provide a basis for a private cause of action for monetary damages. Daniels v. Arlington, 246 F.3d 500, 507 (5th Cir. 2001) (citing Beaumont v. Bouillion, 896 S.W.2d 143, 147-49 (Tex. 1995)). Texas has no provision comparable to Section 1983 and there is no private cause of action for damages implied under the Texas Constitution. Id. Thus, Plaintiff cannot bring a separate claim for damages under the Texas Constitution. Accordingly, the court dismisses this cause of action with prejudice.

[3] Complaint, Docket Entry No. 1, p. 2.

[4] Defendant's Motion for Judgment on the Pleadings and/or for Summary Judgment ("Defendant's Motion"), Docket Entry No. 14; Plaintiff's Motion for Judgment on the Pleadings and/or for Summary Judgment ("Plaintiff's Motion"), Docket Entry No. 20.

Defendant takes issue with treating Plaintiff's filing as a motion in and of itself, as opposed to a response to its own motion. Defendant's Reply to Plaintiff's Response to Defendant's Motion ("Defendant's Reply"), Docket Entry No. 21, p. 1 n.1. At a scheduling conference on February 23, 2010, the court ordered Plaintiff to file a response to Defendant's motion for judgment on the pleadings or for summary judgment. Id. Plaintiff submitted his own motion for judgment on the pleadings or for summary judgment in response to this order. Plaintiff's Motion, Docket Entry No. 20. That filing appears to be both a motion and a response to Defendant's motion, although it is not labeled as a response. Id. Because Plaintiff's filing clearly states that he is making a motion, the court treats it as such and, furthermore, determines that the court's order requiring a response from Plaintiff with respect to Defendant's motion has been substantially complied with by Plaintiff. See Erikson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (stating that documents filed pro se are to be liberally construed).

Plaintiff, for his part, complains of various violations by Defendant of Federal Rule of Civil Procedure ("Rule") 26 in the litigation of this case. See, e.g., Plaintiff's Motion, Docket Entry No. 20, pp. 3-7. Because Plaintiff's case should be dismissed, as the court finds below, there is no need for a scheduling conference with respect to discovery. But see infra § III.C. (stating that Plaintiff may submit a motion for reconsideration). Thus, Plaintiff's case has not been injured in any way in spite of, as he alleges, Defendant's failure to cooperate with him in conferring prior to the scheduling conference held in

**A.   Defendant**

Defendant is a Texas 501(c)(3) corporation,[5] which has operated a public access cable television channel since 1986 pursuant to a contract with the City of Houston.[6] Defendant has its own Board of Directors; the City of Houston exercises no administrative control over Defendant's activities.[7] Defendant provides no service other than television programming to the City of Houston.[8]

Defendant provides access to television production facilities along with equipment, training, and air time to groups and individual members of the public in the Houston area.[9] Access to these services allows the groups and individuals to present television programming to subscribers of five cable operators, reaching a potential audience of more than one million households.[10]

---

February 2010.

[5]   26 U.S.C. 501(c)(3) permits a qualifying organization to be exempt from taxation.

[6]   Defendant's Motion, Docket Entry No. 14, Ex. A, Affidavit of Terri Bailey Parris ("Parris"), ¶ 3; Ex. B, Contract Between Defendant & City of Houston ("Contract").  Parris is Board Chair of Defendant. Id. Ex. A, Affidavit of Parris, ¶ 3.

[7]   Id. Ex. A, Affidavit of Parris, ¶ 3.

[8]   Id.

[9]   Id. ¶ 4.  Defendant currently provides services for about three hundred individuals and thirty organizational producers, including ordinary citizens, government agencies, churches, political organizations, and community groups.  Id.

[10]   Id.

3


Defendant receives no federal funding.[11]  The funding that Defendant receives pursuant to its contract with the City of Houston comes from access subscriber fees collected from each of the City of Houston's cable franchisees.[12]  Each cable franchisee with customers inside the limits of the City of Houston charges an access subscriber fee to each cable customer.[13]  The cable franchisees make payments to the City of Houston, and the City of Houston gives those funds to Defendant "through a process and formula" set out in the contract between Defendant and the City of Houston.[14]  All funds that Defendant receives from the City of Houston come directly from that fee, not from tax money.[15]

Defendant has no relationship with the Federal Communications Commission ("FCC").[16]  Defendant does not have an FCC-issued broadcast or other license; the FCC does not regulate any of Defendant's operations.[17]

**B.   Plaintiff's Program**

---

[11]   Defendant's Reply, Docket Entry No. 21, Ex. A, Affidavit of Fred Fichman ("Fichman"), ¶ 5.  Fichman is Executive Director of Defendant and, in that capacity, is familiar with Defendant's funding sources, operational procedures, employees, and the regulations to which Defendant must adhere.  Id. ¶ 3.

[12]   Id. ¶ 6.

[13]   Id.

[14]   Id.

[15]   Id.

[16]   Id. ¶ 7.

[17]   Id.

Plaintiff is President and Chief Executive Officer of Divine Unity 1, Inc., ("DU1") a Texas 501(c)(3) corporation "dedicated to unifying all people, nations, and faiths to operate and live with divine morals and standards."[18] DU1 used its television program <u>Gathering the Lost Children of Israel</u> ("<u>Lost Children</u>") "to relay the message given to [Plaintiff] by God to fulfill its objective of unifying and enlightening all through truth."[19]

In 2006 Teboho Matlamela ("Matlamela") agreed to be the producer of <u>Lost Children</u>.[20] At that time, he signed a contract with Defendant to cablecast the show, which originally aired Wednesday nights at 7:30 p.m.[21] Matlamela was first asked to edit a submitted episode in 2008, at which time he was asked to edit the show multiple times to eliminate brief scenes of nudity.[22] By February 2009, Matlamela states that he was being asked to "continuously edit" the shows before Defendant would air them.[23]

Relations between Defendant and those involved with the

---

[18] Plaintiff's Motion, Docket Entry No. 20, Ex. K, Affidavit of Shaka Sulaiman ("Sulaiman"), ¶¶ 3-4. Sulaiman is the current Vice President of DU1; at the time of DU1's relationship with Defendant, Sulaiman was the Operations Manager. <u>Id.</u> ¶ 3.

[19] <u>Id.</u> ¶ 4.

[20] <u>Id.</u> Ex. J, Affidavit of Matlamela, ¶ 3; Ex. L, Affidavit of Kristin Clement ("Clement"), ¶ 4. Clement is the General Manage of DU1; at the time <u>Lost Children</u> was in production, she was the Vice President of DU1. <u>Id.</u> Ex. L, Affidavit of Clement, ¶ 3.

[21] <u>Id.</u> Ex. L, Affidavit of Clement, ¶ 4.

[22] <u>Id.</u> Ex. J, Affidavit of Matlamela, ¶ 4.

[23] <u>Id.</u>

production of <u>Lost Children</u> deteriorated thereafter, as Plaintiff took the position that, when measured against Defendant's own rules and procedures, none of the episodes being submitted needed to be edited for explicit content.[24] After a series of meetings, letters, and phone calls, in which nothing was resolved, Defendant informed Matlamela that <u>Lost Children</u> had been suspended.[25] A certified letter from Defendant to Matlamela explained that the suspension was based on Matlamela's repeated failure to identify submitted episodes containing adult material and commercial content, which was a violation of Defendant's rules and procedures.[26] As a consequence, Matlamela was suspended from use of the facilities, equipment, and air time for his programs; was barred from the facility as a guest, host, or participant in any program; and was told that he would be asked to leave if he entered the building.[27]

## II. Legal Standards

Both parties move for dismissal of the case under Federal Rules of Civil Procedure ("Rule") 12(c) and 56(c).

**A. Rule 12(c): Judgment on the Pleadings**

Rule 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on

---

[24] <u>Id.</u> ¶ 5.

[25] <u>Id.</u> ¶¶ 5-7.

[26] <u>Id.</u> Ex. J.1, June 15, 2009 Letter from Defendant to Matlamela.

[27] <u>Id.</u>

6

the pleadings." The standard for deciding a motion under Rule 12(c) is the same as that for deciding a motion under Rule 12(b)(6). Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 313 n.8 (5th Cir. 2002).

The question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

The court determines whether the plaintiff has stated a legally cognizable claim that is plausible; the court does not evaluate the plaintiff's likelihood of success. Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). A pleading will not suffice to survive a motion to dismiss if it only offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. Id.

Under Rule 12(d), "[i]f, on a motion under . . . Rule 12(c), matters outside the pleadings are presented to and not excluded by

the court, the motion must be treated as one for summary judgment under Rule 56." Here, the parties have submitted copious amounts of evidence beyond the pleadings in support of their motions, and the court therefore **DENIES AS MOOT** Plaintiff's and Defendant's respective motions for judgment on the pleadings[28] and proceeds to treat their motions as motions for summary judgment, as each party requested be done in the alternative.

**B.    Rule 56(c): Summary Judgment**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

---

[28]    The court notes, however, that Plaintiff's complaint does not allege state action or even mention the City of Houston or any other governmental entity, as would be required for a successful claim under Section 1983. See Complaint, Docket Entry No. 1.

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R

Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III.  Analysis

Defendant makes three arguments in support of its motion for summary judgment: (1) Plaintiff's first amendment claim fails because Defendant is not a state actor; (2) Defendant followed the legal regime for regulation of indecent speech as articulated in Federal Communications Commission v. Pacifica Foundation, 438 U.S. 726 (1978), and its progeny; and (3) Defendant's policy operates only as a reasonable time, place, and manner restriction on protected expression.[29] The court finds that Defendant is not a state actor, and thus the court need not address Defendant's latter two arguments.

**A.  Section 1983 Claims**

"To state a claim under [Section 1983], a plaintiff must

---

[29] Defendant's Motion, Docket Entry No. 14, p. 9.

allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).  Because, among other things, Plaintiff's complaint claims violation of his right to freedom of speech pursuant to the First Amendment, the first prong of Section 1983 is satisfied.

Therefore, at issue is whether Defendant was acting "under color of state law" when it allegedly violated Plaintiff's First Amendment rights, with the critical inquiry being whether "the alleged infringement of federal rights [can be] fairly attributable to the State."  Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (internal quotation omitted).  In other words, "merely private conduct, no matter how discriminatory or wrong," is outside the scope of Section 1983.  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999).

The Supreme Court has used several tests for deciding whether a private actor's conduct can be fairly attributable to the State. See, e.g., Cornish v. Corr. Servs. Corp., 402 F.3d 545, 549-50 (5th Cir. 2005) (summarizing tests).  The public function test examines whether the private actor performs a function which is "exclusively reserved to the State."  Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158 (1978).  The state compulsion test examines whether the private actor's conduct is attributable to the State when the State exerts

coercive power over the private entity or provides significant encouragement. Addickes v. S.H. Kress & Co., 398 U.S. 144, 170-71 (1970). The nexus test, also known as the state action test, examines whether the State has inserted "itself into a position of interdependence with the [private actor, such] that it was a joint participant in the enterprise." Jackson v. Metro. Edison Co., 419 U.S. 345, 357-58 (1974). The joint action test examines whether a private actor will be considered a state actor where the private actor is a "willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27 (1980). The Supreme Court has not resolved "[w]hether these different tests are actually different in operation or simply different ways of characterizing [this] necessarily fact-bound inquiry." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

For the public function test, the issue is whether Defendant acted under color of state law in determining whether to force Plaintiff to edit his shows and whether to terminate production of Lost Children in its facilities. See Cornish, 402 F.3d at 550 (citing George v. Pacific-CSC Work Furlough, 91 F.3d 1227 (9th Cir. 1996) ("An entity may be a state actor for some purposes but not for others.")). Plaintiff has presented no facts concerning how Defendant's role as a conduit for the production and distribution of local television programs is a traditional service of local government, i.e., a function traditionally reserved to the State.

Therefore, Defendant's actions are not fairly attributable to the State under the public function test.

In addition, there is no competent summary judgment evidence that the City of Houston exerted coercive power or provided significant encouragement for Defendant's decisions to require certain episodes be edited and to terminate production of <u>Lost Children</u>. Therefore, Defendant's actions are not fairly attributable to the City of Houston under the state compulsion test.

For purposes of the nexus/state action test and the joint action test, Plaintiff stresses that Defendant has a contract with the City of Houston and that Defendant is regulated by various federal and local entities, allegedly including the City of Houston, the Houston City Council, the City of Houston Administration and Regulatory Affairs Department, and the City of Houston Finance and Administration Department.[30] However, the "[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." <u>Rendell-Baker</u>, 457 U.S. at 841. Furthermore, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State . . . ." <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982). Thus, to make the requisite showing of state action by a regulated

---

[30] <u>See, e.g.</u>, Plaintiff's Reply to Defendant's Response to Plaintiff's Motion ("Plaintiff's Reply"), Docket Entry No. 22, pp. 4-11.

13

entity, Plaintiff must establish "a sufficiently close nexus between the State and the challenged action of the regulated entity." Id.  Here, there is no evidence that the City of Houston willfully participated, or was a joint participant, in Plaintiff's decisions with respect to Lost Children, and Defendant's performance of a public contract and its regulation by various government agencies do not, in this particular case, affect the court's analysis.  Therefore, as a matter of undisputed fact, Defendant's decisions are not fairly attributable to the City of Houston under either the nexus/state action test or the joint action test.

In sum, Plaintiff has failed to produce any facts in support of its assertion that the State encouraged, compelled, or was in any way involved in Defendant's decisions with respect to the content of and the termination of Lost Children.  Viewing all competent summary judgment evidence in a light most favorable to Plaintiff, then, Plaintiff has failed to establish that Defendant's decisions with respect to Lost Children were fairly attributable to any government entity.  Plaintiff is thus not entitled to relief for his First Amendment claims under Section 1983 because there was no state action.

Case law with respect to local access channels comports with this decision.  The Fifth Circuit has not expressly decided whether a local access channel represents a government-owned designated

14

public forum. However, in a case wherein the cable access company had implicitly conceded that it was a public forum, the court stated, in dicta:

> [T]he Supreme Court has cautioned that "the public forum doctrine should not be extended in a mechanical way to the very different context of public television-broadcasting." Arkansas Educ. Television Comm. v. Forbes, 523 U.S. 666, 672-73 (1998). In a later cable regulation case, seven justices of the Court either rejected or declined to consider Justice Kennedy's assertion that a local access channel is a public forum available to citizens under the most exacting constitutional standards. Compare [Denver Area Educ. Telecomm. Consortium v. FCC, 518 U.S. 727, 780-84 (1996)] (Kennedy, J., concurring in part and dissenting in part), with id. [] at 747-51 [] (Breyer, J.) (refusing to consider public forum doctrine), and id. [] at 825-32 [] (Thomas, J., concurring in the judgment in part and dissenting in part) (PEG channel is not a public forum). If one were either to press the analogy between [this plaintiff] and a classic public television station or to reject the public forum doctrine for local access channels, then [this plaintiff] would enjoy virtually unfettered programming discretion. [The plaintiff] does not request such latitude, however, so the arguments that [the plaintiff] is not a public forum or is a limited public forum are not before us.

Horton v. City of Houston, Tex., 179 F. 3d 188, 192 (1999).

In spite of that concern, this court has found no circuit court or Supreme Court case holding that a public access local cable channel operates as a public forum or that its operator is a state actor. On the contrary, at least two circuit courts have found that such a channel is not a public forum and that such an operator is not a state actor. See Wilcher v. City of Akron, 498 F.3d 516, 519 (6th Cir. 2007); Loce v. Time Warner Entm't Advance/Newhouse P'ship, 191 F.3d 256, 266 (2[d] Cir. 1999).

15

In <u>Wilcher</u>, the producer of a public access television program brought suit against the cable operator, alleging that her First Amendment rights were violated by the operator because it required a twenty-five dollar fee for each tape submitted for broadcast and because submissions were limited to persons within the immediate geographic area. 498 F.3d at 517-18. First, the court found that the cable operator did not meet the requirements of the public function test because "TV is not a traditional service of local government. A service provided by a distinct minority of local governments cannot fairly be characterized as a function traditionally reserved to the state." <u>Id.</u> at 519. Second, the court found that the cable operator did not meet the requirements of the state compulsion test on the facts of the case because the plaintiff had alleged no more than that city officials had expressed their concern about sexually explicit programming to the cable operator, not that city officials had coerced or encouraged the cable operator to change its regulations concerning such programming. <u>Id.</u> at 519-20. Third, the court found that the cable operator did not meet the requirements of the symbiotic relationship test because a cable franchisee did not automatically become a state actor when its rules were simply approved by the local government, as they were there. <u>Id.</u> at 520. Thus, the court held, the cable operator was not a state actor and there was no action taken by the cable operator that could be fairly

16

attributable to the State.  Id.

In making its own decision, the Wilcher court also approvingly discussed the Second Circuit's decision in Loce:

> The Second Circuit has held that a cable operator is not a state actor where it enacted regulations designed to eliminate indecent broadcasting on a leased access channel.  [Loce, 191 F.3d.]  In Loce, Time Warner implemented a policy prohibiting indecent programming on leased access[31] stations in its Rochester, New York, affiliate.  The plaintiffs claimed that Time Warner had violated their First Amendment rights when the company refused to air several of their broadcasts.  The Second Circuit held that the plaintiffs' claims were barred because Time Warner was not a state actor.  Id. at 267.  The court noted that leased access channels were subject to both federal and state regulation, but held that this alone did not convert Time Warner's private action into state action.  The court also rejected the plaintiffs' argument that complaints about the allegedly indecent programming from civic leaders to Time Warner were sufficient to render the new regulations state action.

Wilcher, 498 F.3d at 520-21.

Thus, finding these cases persuasive and having viewed the submitted evidence in a light most favorable to Plaintiff, the court finds that Plaintiff has failed to establish that Defendant's decisions not to air certain unedited episodes and to terminate the television series are fairly attributable to the City of Houston or to any other governmental entity.  Plaintiff is therefore not entitled to relief for any of his First Amendment claims under Section 1983, and they are therefore **DISMISSED**.

---

[31] The Wilcher court footnoted that, "[l]eased access stations allow programmers to purchase air time from the cable operator for commercial broadcasting.  Like public access channels, they are open to anyone, and are controlled by the local cable operator."  Wilcher, 498 F.3d at 520 n.2.

17

**B.   State Law Claims**

Although unclear, Plaintiff may also be alleging various state law causes of action, including defamation.[32]  Because the court is dismissing all of Plaintiff's federal claims against Defendant, the court will not exercise supplemental jurisdiction over Plaintiff's state law claims.  See 28 U.S.C. § 1367(c)(3) (allowing district court's discretion to decline to exercise supplemental jurisdiction over a state law claim when the court has dismissed all claims over which it had original jurisdiction); Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 876 (5th Cir. 2000) (indicating that, upon dismissal of all federal claims, the court should dismiss the supplemental state law claims without prejudice).

Accordingly the court **DISMISSES** all of Plaintiff's state law claims without prejudice.

**C.   Plaintiff's Request for Discovery**

Plaintiff complains that he has not had the opportunity to conduct discovery in this case.[33]  This position, however, is undermined by Plaintiff's submission of a motion for summary judgment.[34]  Based on the record as it now stands, the court cannot fathom what evidence Plaintiff could obtain through discovery that would change the court's analysis in this case.  However, the court

---

[32]   See Complaint, Docket Entry No. 1, p. 3; see also Plaintiff's Reply, Docket Entry No. 22, p. 2.

[33]   See e.g., Plaintiff's Reply, Docket Entry No. 22, p. 5.

[34]   Plaintiff's Motion, Docket Entry No. 20.

will delay entering final judgment on this case for fourteen days. Within fourteen days of entry of this memorandum opinion, Plaintiff may submit to the court a motion for reconsideration. Therein, Plaintiff must raise a colorable, non-speculative claim that Defendant's summary judgment evidence is false. If Plaintiff does not submit such a motion before the end of fourteen days, the court will enter final judgment at that time.

### IV. Conclusion

Based on the foregoing, the court **DENIES AS MOOT** Defendant's Motion for Judgment on the Pleadings, **GRANTS** Defendant's Motion for Summary Judgment (Docket Entry No. 14) and **DENIES AS MOOT** Plaintiff's Motion for Judgment on the Pleadings and **DENIES** Plaintiff's Motion for Summary Judgment (Docket Entry No. 20).

**SIGNED** in Houston, Texas, this 20th day of July, 2010.

Nancy K. Johnson
United States Magistrate Judge